WEST RIDGE, INC. *v.* McNAMARA ET AL.

[No. 210, September Term, 1959.]

*Decided May 19, 1960.*

450

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Albert J. Goodman* and *W. Lee Thomas,* with whom were *Kenneth C. Proctor and Proctor, Royston & Mueller* on the brief, for appellant.

*Eugene M. Childs,* with whom were *Childs & Bald* on the brief, for appellees.

BRUNE, C. J., delivered the opinion of the Court.

This is a shopping center zoning case in which the Circuit Court for Anne Arundel County held the reclassification of 18.5 acres of land from Agricultural to Light Commercial and of .6 acre from Agricultural to Heavy Commercial was invalid. The appellant, West Ridge, Inc., is the owner of the land; the appellees are neighbors who objected to the re-classification. Their standing to sue is conceded.

In July, 1958, West Ridge bought a tract of about 56 acres near Macey's Corner, which is roughly eight miles north of Annapolis. The property lies on the east side of the Ritchie Highway. This is a dual north-south highway which has two lanes for traffic in each direction, divided by a median grass plot, and a wide shoulder on each side. At the south end of the tract McKinsey Road intersects the Ritchie Highway, and near the north end the Arundel Beach Road enters, but does not cross the Ritchie Highway. In addition, the Old Annapolis Boulevard crosses the Ritchie Highway diagonally in a more or less southwest-northeast direction at what may be called the north end of Macey's Corner.

In August, 1958, West Ridge filed a petition for the re-

classification of its land, which was then classified as Agricultural.[1] For that part of the land fronting on the Ritchie Highway, Commercial zoning was sought—Heavy Commercial for a small area at each end and Light Commercial for the larger area between these two, on which it was proposed to construct a shopping center. For the greater part of the 56-acre tract—lying to the east of and behind the proposed Commercial areas—a Cottage Residential reclassification was sought. This was granted, and it is not under attack in this suit. The controversy centers on the areas reclassified as Light and Heavy Commercial.

There was a public hearing before the County Planning and Zoning Commission (the Commission) on August 21, 1958, at which both the proponents and the opponents were heard. On August 27, 1958, the Commission recommended (by a 3-1 vote, the County Commissioner member not voting) to the Board of County Commissioners of Anne Arundel County that the West Ridge application be approved. There was another public hearing before the County Commissioners, and a relatively small change was made in the West Ridge proposal by which the proposed rezoning of one of two tracts as Heavy Commercial was dropped. On November 13, 1958, the County Commissioners adopted resolutions, which (in addition to rezoning part of the tract from Agricultural to Cottage Residential) rezoned the 18.5 and .6 acre tracts fronting on the Ritchie Highway from Agricultural to Light Commercial and Heavy Commercial, as above stated.

The County Commissioners' resolution approving the West Ridge Commercial reclassification contained recitals: (a) that "the Board of County Commissioners finds that conditions have changed substantially and are continuing to change in the vicinity of the [subject] property since the adoption of the Comprehensive Zoning Ordinance on July 1, 1952, necessitating additional commercial uses and the proper zones in which they may be located;" (b) that "the Board is of the

1. All properties not otherwise classified at the time of the adoption of the original County zoning map in 1952 fell into the Agricultural classification. See *American Oil Co. v. Miller,* 204 Md. 32, 102 A. 2d 727.

opinion that the property * is a suitable and logical location for the type uses proposed;" (c) that "the Board feels that the development of the proposed commercial facilities in general accord with the plans submitted * * * will not be detrimental but will be beneficial to the area and to the County as a whole;" and (d) that "the Board is of the opinion that these changes in zoning will cause no devaluation of adjoining properties, especially since the subject properties are abutted on three sides, except for an existing commercial zone, by the petitioner's property and fronts on a highway that is adequate to carry any additional traffic that might be generated by the proposed commercial facilities."

The evidence presented before the County Commissioners was introduced by stipulation in the proceedings in the Circuit Court, and some additional evidence was offered. In brief, there was evidence before the County Commissioners presented by West Ridge to show: (a) that the area within a two-mile radius of the West Ridge property contained a population of about 9,500 persons, that another 6,000 lived within a five-minute driving distance; (b) that growth in the area had been substantial since January 1, 1952; (c) that the people within this two-mile radius were nearer to the subject property than to either the Glen Burnie area to the north or Annapolis to the south (the nearest large shopping areas); (d) that about 725 residential building permits had been granted in the immediate area from January 1, 1952, through the first eight months of 1958; (e) that there had, during this time, been 20 zoning reclassifications from Agricultural to Cottage Residential, 10 from Agricultural to Light Commercial, 11 from Agricultural or Light Commercial to Heavy Commercial and 2 from Cottage Residential or Agricultural to Light Industrial; (f) that there were over 50 residential developments in the general area, with more than 1,000 new homes planned in the newer ones; (g) that new schools were being built to take care of the increased number of students; (h) that a marketing survey indicated a need for a shopping center of the type proposed in this area; and (i) the proposed shopping center would not cause traffic congestion either on the Ritchie Highway or on other roads. Included in the re-

zoning to Commercial classifications since July 1, 1952, were 7 having frontage on the Ritchie Highway within a mile of the West Ridge tract. There are several service stations and a large food store in the immediate vicinity.

The opponents of the shopping center rezoning offered evidence that it would impair or destroy the rural peace and quiet of their homes and would depreciate the value of their residential properties. A specific objection to the proposed rezoning to Heavy Commercial of the .6-acre parcel for use as a gasoline service station was that there were already some half dozen filling stations in the immediate neighborhood and hence that there was no possible need for another. The proponents countered this objection by evidence to the effect that a service station immediately adjacent to the shopping center would be very useful to "one-stop" patrons who wished to have their automobiles serviced while they shopped.

In the Circuit Court additional evidence, with which the County Commissioners were undoubtedly familiar, was introduced by the opponents. This included testimony to the effect that the Zoning Map serves as the only comprehensive plan for the Election District of the County in which the subject property is located and two resolutions of the County Commissioners pertaining to proposed rezoning in the immediate vicinity. One of these was a resolution dealing with the Arthur W. Giddings property directly opposite the West Ridge tract on the Ritchie Highway; the other dealt with the Shepherd and Vanous petition covering a tract adjacent to the Giddings property and just to the south of it, which is also opposite part of the West Ridge tract.

The Giddings tract resolution was adopted on the same evening (November 13, 1958) as the West Ridge resolutions. Contrary to the adverse recommendation of the Planning and Zoning Commission, this resolution rezoned from Agricultural to Light Commercial a tract of 8.15 acres, which was also intended for use as a shopping center. This resolution contained several recitals. The first was the same recital as (a) in the West Ridge resolution quoted above. Others expressed an opinion or finding that the rezoning would not depreciate other properties in the area, and that the tract

being rezoned fronted on a road which could carry a considerable increase in traffic. There was no express finding that this rezoning would be beneficial to the particular area or to the County as a whole, as in West Ridge recital (c) above.

The Shepherd and Vanous resolution was adopted exactly six months prior to the West Ridge and Giddings resolutions. In that instance, however, the County Commissioners rejected the proposed rezoning. Their findings and reasons for so doing will be referred to somewhat fully at a later point.

In the trial court as in this Court, the chief question was and is whether the action of the County Commissioners in rezoning part of the West Ridge property as Commercial was or was not within the proper exercise of their legislative power. There have been so many cases in this Court in which the basic test has been stated that we think it unnecessary to do more than refer to four cases (three of them very recent) and to the cases therein cited. See *Eckes v. Board of Zoning Appeals*, 209 Md. 432, 121 A. 2d 249; *City of Baltimore v. N. A. A. C. P.*, 221 Md. 329, 157 A. 2d 433; *County Commissioners of Howard County v. Merryman*, 222 Md. 314, 159 A. 2d 854; and *Pressman v. City of Baltimore*, 222 Md. 330, 160 A. 2d 379. These cases recognize the familiar rules that in the case of piecemeal rezoning, there must be a showing of either an error in original comprehensive zoning or such a change in conditions as to warrant rezoning, that if either of these is shown, or if there are facts from which the legislative body could reasonably have made such a finding (*i.e.*, that the matter is at least fairly debatable), the courts may not interfere with the legislative action, and that since there is a presumption in favor of the validity of the legislative action, the burden is on those objecting to the rezoning to show the absence of error in the original zoning and the lack of any such change in conditions as would warrant the rezoning.

The Chancellor was of the opinion that the record was barren of evidence tending to show either a mistake in the original comprehensive zoning plan or that there had been such a substantial change in conditions subsequent to its adoption as to justify the amendatory action, "except for the

increase in residential uses." As to the latter, he noted widespread opposition of neighboring residents, and he quoted from the opinion of this Court in *Zinn v. Board of Zoning Appeals,* 207 Md. 355, 363-364, 114 A. 2d 614. That case left open the question whether "a mere intensification of residential use" could support a reclassification. *Zinn* and a companion case, *Schiff v. Board of Zoning Appeals,* 207 Md. 365, 114 A. 2d 644, held invalid the reclassifications of two tracts "within a stone's throw of each other" to permit the establishment of two large shopping centers. As the Chancellor pointed out, there were also two simultaneous shopping center rezonings here, one on each side of the Ritchie Highway.

There is no contention here that there was any error in original zoning. The controversy as to the shopping center narrows down to the questions of the sufficiency of a change of conditions and of the effect of the almost simultaneous action of the County Commissioners in the Giddings rezoning and of their action six months previously on the Shepherd and Vanous petition for rezoning.

Taking up their action in the Shepherd and Vanous matter first, we note that the recitals in the resolution did not amount to a finding that there had been no change. On the contrary, the County Commissioners stated that commercial development of the subject property might very well be found to be desirable, but that such development at that time would tend to create traffic problems which would be created on several secondary roads with which the County was not then "prepared to cope," which it considered not to be in the public interest under then present conditions. They also took into account the advice of the Planning Administrator that the requested detailed study of the area would involve considerable time and expense and that a preliminary survey indicated that various public improvements were desirable prior to or coincident with extensive commercial development of this and other properties in the area. The Board then stated that it "is of the opinion that the change in conditions in the vicinity of the property petitioned do not warrant the requested change in zoning at this time."

As regards traffic problems, it may be noted that the sec-

ondary roads where such problems were anticipated are all adjacent to the Shepherd and Vanous tract and are on the opposite side of the Ritchie Highway from the West Ridge property. With regard to the other grounds for disapproval of the Shepherd and Vanous petition above stated, it should be noted that when the West Ridge application came before the Board, it did so with the favorable recommendation of the Planning and Zoning Commission.

As to the time and extent of changes, this case seems readily distinguishable from *Zang v. Taylor,* 203 Md. 628, 102 A. 2d 723, where two successive reclassifications of the same property had occurred, the second only six months after the first, and this Court upheld a contention that no such substantial change as to warrant the second rezoning could have occurred in that six months' period. We think that the present case falls within the rule recognized in *County Commissioners of Howard County v. Merryman, supra,* that at least in passing upon the sufficiency of change where (as here) there has been no rezoning since the original comprehensive zoning, the aggregate of all changes since the original zoning may be taken into consideration.

Furthermore, just how much real inconsistency, if any, there may have been between the County Commissioners' denial of the Shepherd and Vanous petition and their granting of the West Ridge petition, is rather doubtful. As above stated, their refusal in the Shepherd and Vanous matter seems to have been based not on the absence of change, but on the ground that other considerations made the proposed reclassification inadvisable at that particular time and in that particular place.

The appellees' principal contention rests on the *Zinn* and *Schiff* cases. There serious traffic problems were involved as to each of the proposed shopping centers because of inadequate access roads, with little prospect of their early improvement. Here the testimony does not show any comparable traffic problem. There is here, as there was in *Zinn* and *Schiff,* the absence of any comprehensive land use plan, other than the zoning map. That, however, does not of itself bar rezoning. *Eckes v. Board of Zoning Appeals, supra; Press-*

*man v. City of Baltimore, supra.* The absence of careful planning was pointed out in *Zinn* and was a factor in the result of that case and of the *Schiff* case. In each of those cases, it was held that there was an absence of any showing of original mistake in zoning or of any such change in conditions as would warrant rezoning, and that the action taken amounted to ill-considered piecemeal zoning of the kind condemned in such cases as *Cassel v. Mayor, etc., of Baltimore,* 195 Md. 348, 73 A. 2d 486.

Here, unlike *Zinn* and *Schiff,* but like *Pressman,* the reclassification in question is not inconsistent with everything else in the vicinity. There is other commercialization in the immediate neighborhood. And here, unlike *Zinn* and *Schiff,* notwithstanding the absence of any comprehensive plan other than the land use map, the planning aspects of the matter have not been neglected. On the contrary, the application was carefully studied and considered by the body charged with duties of planning, the County Planning and Zoning Commission, (Code (1957), Art. 66 B, Sec. 15); and it was recommended by that body. The Giddings rezoning is not before us, and we express no opinion with regard thereto. The granting of both applications at the same session may raise questions as to the wisdom of the legislative action (as, for example, if the over-extension of shopping centers should lead to commercial slums), but that is not a matter for determination by the courts, if the justification for the legislative change was at least fairly debatable.

In the instant case we think that the evidence of a change in conditions due to the substantial increase in population of the area, of the increasing commercialization in the vicinity, and of the general public trend towards the use of shopping centers was sufficient to bring the question of rezoning this West Ridge property into the field where the matter was at least fairly debatable. See *Eckes v. Board of Zoning Appeals, supra,* 209 Md. at 441; *Pressman v. City of Baltimore, supra.* This evidence and the careful consideration given by the Planning and Zoning Commission to the West Ridge application, and its favorable recommendation, all serve to dis-

tinguish this case from the apparently ill-considered piece-meal zoning involved in the *Zinn* and *Schiff* cases.

The rezoning of the .6-acre tract to Heavy Commercial for use as a service station is, we think, incidental to the rezoning of the 18.5-acre tract for use as a shopping center. So considered, we think that it, too, was within the realm of the fairly debatable.

In accordance with the above views, the decree appealed from will be reversed.

*Decree reversed, with costs, and bill dismissed.*