## BISHOP ET AL. *v.* BOARD OF COUNTY COMMIS-SIONERS OF PRINCE GEORGE'S COUNTY ET AL.

[No. 88, September Term, 1962.]

496

*Decided January 31, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and SYBERT, JJ.

*Marion E. West,* with whom were *West & Venables* on the brief, for the appellants.

*Robert B. Mathias,* with whom were *Russell W. Shipley, Lionell M. Lockhart* and *Joseph S. Casula* on the brief, for the Board of County Commissioners, one of the appellees.

*Carlyle J. Lancaster,* with whom were *Welsh & Lancaster* on the brief, for Suburban Homes, Inc., the other appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Prince George's County affirming the action of that county's Board of County Commissioners, sitting as a District Council, which rezoned the property in question owned by the appellee, Suburban Homes, Inc. (Suburban) from an R-R classification to an R-18 (Multiple Family, Low Density Residential) classification.

The subject property in Prince George's County contains 57.34 acres located on the southwest side of, and fronting on, Riverdale Road about 2200 feet northwest of the intersection of that road with Defense Highway, otherwise known as State Route 450. The property, an irregular shaped tract, has a Riverdale Road frontage of about 1513 feet and extends back from that Road a depth of about 1450 feet where it adjoins single dwelling property which fronts on Finn's Lane. The tract is virtually surrounded by R-R or R-55 property (including the housing developments of Greenbriar, Lanham Dale, Kidmore Park, Martin's Woods and Lanham Woods) except for the extreme southeast corner which adjoins or almost adjoins the northwest corner of a C-1 (commercial) tract fronting on Defense Highway. Across Riverdale Road from the subject property Suburban was engaged in building a 2,000 home housing development known as Carrollton, with 1200 homes having already been completed. The subject property was undeveloped and heavily wooded along the outer edge, but the interior had once been used as a gravel pit.

On August 20, 1960, the appellee, Suburban, filed application for rezoning the property from R-R (Rural, Residential) to R-18. This application became No. A-3809. On the same date the president and principal stockholder of Suburban also filed a rezoning application for a 17.21 acre tract located on the northern side of Riverdale Road, adjoining Carrollton, located 600 feet northwest of the intersection of Riverdale Road and Defense Highway, and distant from the subject property by 300 feet at the points where the two tracts were nearest each other. The Maryland-National Capital Park and Planning Commission filed reports recommending denial of both applications, stating with regard to the subject property of A-3809

that the request was "not in accordance with the proposals contained in the * * * Master Plan adopted by the Commission for this area" and that a multi-family development of the property would "not secure a harmonious and desirable adjustment to the surrounding and proposed land use pattern." The Commission concluded that the creation of a spot of relatively high density zoning on the subject property would serve no purpose that could be considered in the interest of public welfare and safety.

Hearings were held by the Board on both applications on December 21, 1960, and many residents of the area, including the appellant, Bishop, who lived northeast of the property at the intersection of Riverdale Road and Goeffrey Avenue, appeared as protestants, claiming that neighborhood conditions had not changed to such an extent as would call for rezoning of this particular tract, that the property was needed for a school, and that multi-family dwellings at this spot would lead to extreme traffic congestion in the area. Testimony in favor of the change was to the effect that the apartments to be built would not adversely affect the surrounding homes, that the terrain of this property was in places too steep for the building of single family dwellings and was best suited for multi-family apartments, and that such apartments were needed in view of the development of the area.

On the date of the hearing the Board approved application A-3810, but took A-3809 under advisement and subsequently granted it, without further hearing, on March 14, 1961. Bishop and others then filed a petition for review and the Circuit Court reversed the Board's decision on July 13, 1961, holding that there was "insufficient evidence in the case of a basic mistake in the original zoning or of a substantial change in the character of the neighborhood to form a basis for reasonable debate on either point." The trial judge did not believe that the testimony concerning the terrain was sufficient to justify a conclusion of error in the original zoning. On July 17, 1961, appellee Suburban filed a petition in the Circuit Court for a new trial or for a rehearing on the basis that at the time of the Circuit Court review the Master Zoning Map did not show the rezoning of the 17.21 acre tract to a C-1 classification. The

Court remanded the matter to the Board for further proceedings and directed that at such proceedings "testimony and additional evidence shall be confined to the zoning change alleged in the Petition * * * and its effect on the property in question."

In proceedings held on October 18, 1961, the Board heard testimony that the C-1 rezoning action under application A-3810 had a direct and relevant bearing on the subject property, that it evidenced a change in the neighborhood make up which would be partially stabilized by rezoning the subject property in the R-18 classification, that the granting of petition A-3810 extended the commercial classification to within 300 feet of the subject property and that the rezoning of the subject property would tend to check the spread of the slowly increasing commercial classification which was to be expected to follow and would thereby protect the single family areas behind the subject property. The Planning Engineer for the County Regional Office of the Maryland-National Capital Park and Planning Commission introduced into evidence the report of the Commission which still recommended rejection of the application on the basis that the rezoning of the 17.21 acre tract was not a new factor which could form a basis for a change in the Board's decision. On January 16, 1962, the Board determined that the additional evidence did "not justify any modification, alteration or reversal of [its] previous decision," which had rezoned the subject property. This action was affirmed by the Circuit Court on the basis that the testimony regarding the effect of the rezoning of the 17.21 acre tract provided "some valid basis on which the District Council could reach the conclusion which it did" and that therefore "the matter was reasonably debatable."

At the first hearing on review the Circuit Court found that there was no evidence of an error in original zoning which would justify the change. We think that this conclusion was correct and we shall confine our consideration of the case to the second question—was there a sufficient change in the neighborhood to make the question of rezoning fairly debatable and so to support the action of the Board? We state the question in this way because the trial judge expressed the

view—and we agree with him—that the weight of the evidence was against the rezoning. The case is on the borderline as to whether there was or was not enough evidence of changed conditions to bring the case within the area of fair debatability.

One question of law which was raised in the trial court has not been urged on appeal. We therefore do not decide it. *Comptroller of Treasury v. Aerial Products, Inc.,* 210 Md. 627, 644-45, 124 A. 2d 805; *Mullan v. Mullan,* 222 Md. 503, 506, 161 A. 2d 693; *Baxter v. State,* 223 Md. 495, 502, 165 A. 2d 469; *Hyde v. State,* 228 Md. 209, 218, 179 A. 2d 421. Cf. Maryland Rule 846 f. That question was · the validity or invalidity of the Acts of 1957, Ch. 712, § 1113 (d) amending the Code of Public Local Laws of Prince George's County (1953 Ed.), authorizing the Circuit Court on review of action of the Board (the District Council) in zoning matters to reverse or modify such action if it is "[a]gainst the weight of competent, material and substantial evidence in view of the entire record, as submitted by the agency." [1] The trial court held this provision unconstitutional. The appellants do not challenge this holding and we, therefore, do not pass upon it.

This case presents some rather unusual facts. First, the principal element of change relied upon by the proponents of the rezoning here in issue was brought about through the action of substantially the same interests—the reclassification of about 17 acres on the other side of Riverdale Road for commercial use (C-1), intended as a shopping center. Second, this reclassification of property on the other side of the street occurred *after* the original hearing which resulted in the rezoning of the subject property, and the two applications were *not* heard together—indeed, No. 3810 was heard *after* No. 3809, though on the same date, and was excluded from consideration while No. 3809 was being heard. Third, the asserted need for the rezoning of the subject property presupposed the need for rezoning a third property (the enclave) currently zoned as R-55, fronting on Riverdale Road opposite the property rezoned as C-1 on Application No. 3810, lying behind other C-1 property

---

1. We note that this statute was repealed by the Acts of 1959, Ch. 780, Sec. 1, but was re-enacted substantially *verbatim* by § 79 (i), item (6) contained in said Ch. 780, which was adopted as an emergency Act and took effect April 28, 1959.

fronting partly on Riverdale Road but mainly on the Defense Highway, and abutting to the west a triangular piece of land having its shortest side on the southwest side of Riverdale Road opposite the No. 3810 C-1 property, and running back, wedge-like diminishing to a point, between the enclave and a part of the subject property, and abutting on its fourth, or southwest side, another portion of the subject property. The enclave, it was said by a witness for the proponents who was a land-planner, "lends a key to this whole matter at this particular point." It was not, however, directly involved in these proceedings.

At the threshhold of our consideration of the law applicable to this case is the rule that in reviewing zoning or rezoning by the Board, acting in its legislative capacity, the function of the Court is a narrow one. *West Ridge, Inc. v. McNamara,* 222 Md. 448, 454, 160 A. 2d 907; *Overton v. Co. Commissioners,* 225 Md. 212, 218, 170 A. 2d 172; *Pressman v. Baltimore,* 222 Md. 330, 160 A. 2d 379; *Trustees of McDonogh v. Baltimore County,* 221 Md. 550, 565, 158 A. 2d 637; *Hewitt v. Baltimore County,* 220 Md. 48, 151 A. 2d 144. Unless the action was arbitrary, capricious, unreasonable, discriminatory or beyond statutory or constitutional limitations, the courts cannot set it aside. And, to make such determination we must review the action of the Board in the light of the facts as presented and conditions as they existed as of the date of the Board's action. *Trustees of McDonogh v. Baltimore County, supra,* at 571; *American Oil Company v. Miller,* 204 Md. 32, 38, 102 A. 2d 727. The action with which we are now concerned is that taken after the remand of the case by the Circuit Court.

Reverting now to the facts of this case, we note that the first of the unusual factual situations above mentioned did not present, and was not treated as presenting, a hardship created in part by the applicant. Cf. *Marino v. City of Baltimore,* 215 Md. 206, 220, 137 A. 2d 198 (exception previously obtained as to part of appellants' tract making balance less desirable for existing residential zoning). Cf. *Gleason v. Keswick Improvement Ass'n,* 197 Md. 46, 78 A. 2d 164 (one who purchased with full knowledge of zoning held not entitled to complain of hardship), and *Frankel v. City of Baltimore,* 223 Md. 97, 101,

162 A. 2d 447 (a case of taking, not merely of hardship). Neither is the rezoning here involved a matter of spot zoning of the type which is not permissible. See *Pressman v. Baltimore, supra,* at 339-40, in which an extension of commercial zoning was upheld. Cf. *Hewitt v. Baltimore County, supra,* in which a reclassification wholly inconsistent with a comprehensive plan was held invalid. Here the Board saw fit to follow one departure (on Application 3810) from a previously approved plan with another departure (Application 3809). In doing so, it had before it evidence from which it could conclude that its action with regard to the subject property was consistent with the public interest in limiting and restricting any unfortunate effects which might follow from its first departure from the general plan for the area, which it had previously approved. There is no appeal before us with regard to Application 3810, and whether or not that rezoning was subject to successful attack as spot zoning and regardless of whether we approve or disapprove the granting of that rezoning, there is no action which we can now take to revise what the Board has seen fit to do with regard to that property.

That the enclave was taken into consideration before the Board indicates that thought was given to the general area, not merely to the one property which was the subject of the rezoning application then under consideration. This would tend to negate, rather than to support, a charge of spot zoning, whether of the opprobrious or of the permissible kind. An expert witness representing the Park and Planning Commission, a man of recognized ability in the field, who strongly disagreed with the proposed rezoning, admitted candidly on cross-examination that the rezoning of the 17-acre tract under Application 3810 gave rise to a need to review the general area. In view of all the evidence before the Board, we cannot say that at the time when it took its final action following the remand by the Circuit Court that its action was beyond the realm of the fairly debatable. *West Ridge, Inc. v. McNamara, supra; Pressman v. Baltimore, supra; Overton v. Co. Commissioners, supra; Hedin v. Bd. of Co. Commissioners,* 209 Md. 224, 120 A. 2d 663; *Hewitt v. Baltimore County, supra; Temmink v. Bd. of Zoning Appeals,* 212 Md. 6, 128 A. 2d 256. Here, in ad-

dition to the testimony of change already alluded to, there was evidence of much commercial zoning existing not only across Riverdale Road from the subject property but also at the extreme southeast corner of the property. This is not, therefore, a case in which the suggested rezoning would be completely inconsistent with the other zoning in the immediate area (cf. *Zinn v. Board of Zoning Appeals,* 207 Md. 355, 114 A. 2d 614; *Schiff v. Board of Zoning Appeals,* 207 Md. 365, 114 A. 2d 644); here the rezoning fits more or less in with the commercial zoning in the area. (See *West Ridge, Inc. v. Mc-Namara, supra; Pressman v. Baltimore, supra*). We think that the Board here could find that the appellees had met the burden of showing a substantial change in the character of the neighborhood. Contrast *Northwest Merchants Terminal, Inc. v. O'Rourke,* 191 Md. 171, 60 A. 2d 743. So long as there is no valid challenge to the prior action we think that the Board, in exercising the legislative functions of zoning, is not to be precluded from acting on the basis of its prior action and the effect of it on the surrounding area. *Trustees of McDonogh v. Baltimore County, supra.*

We find no merit to the claim that appellants were deprived of due process of law in that no proper notice of the second hearing of the Board was furnished as required by the Prince George's County zoning ordinance. It may be that this situation does not fall within the category set out in the ordinance since this matter was, the second time, before the Board on remand from the Circuit Court and was not a rehearing called by the Board on its own motion. Thus, advertising would not have been necessary so long as the parties had actual notice of the hearing. At any rate, there is no doubt that appellants had such notice in the form of a letter from the Attorney for the County Commissioners which was directed to every individual who appeared at the original hearing and announced the court decision as well as the time and place of the rehearing. At the second hearing the Attorney for the appellants was present and when asked "Are you ready to proceed?", replied, "We are ready to proceed," and then did proceed to cross-examine the appellees' witnesses and examine a witness favorable to appellants. In view of this representation we cannot see

how appellants were harmed, and, in fact we believe they did receive adequate notice. See our statements in *Cassidy v. Board of Appeals,* 218 Md. 418, at 422, 146 A. 2d 896.

We find no force in the appellees' motion to dismiss. Some of the maps filed as exhibits in the case, if reproduced in the appellants' appendix, would have been helpful to an understanding of the physical location and of the zoning of the properties in the vicinity. A topographic map, the absence of which from the appendix was a target of the appellees' motion, is in the record. We find it of no significance to our decision. The motion to dismiss is denied.

*Motion to dismiss appeal denied;*
*order affirmed, with costs.*