SUPERVISOR OF ASSESSMENTS OF BALTIMORE
COUNTY v. EDWIN R. FITZGERALD ET UX.

[No. 1647, September Term, 1980.]

*Decided July 16, 1981.*

The cause was argued before THOMPSON, MELVIN and
COUCH, JJ.

*Peter W. Taliaferro, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellant.

*Edwin R. Fitzgerald,* with whom was *Carolyn J. Fitzgerald* on the brief, in proper person, appellees.

COUCH, J., delivered the opinion of the Court.

Edwin R. Fitzgerald and Carolyn J. Fitzgerald appealed the 1978-1979 assessment of the one acre of curtilage surrounding their Baltimore County farmhouse. Following a de novo hearing conducted before a hearing examiner, the Maryland Tax Court issued an order adopting the hearing commissioner's recommendation and affirming the assessment.

The Fitzgeralds then appealed from the Tax Court order to the Circuit Court for Baltimore County, where, after considering memoranda and hearing oral argument, the circuit court reversed in part, and affirmed in part, the order of the Tax Court. The circuit court order also reduced the subject assessment.

From this order the Supervisor of Assessments of Baltimore County appeals, and asks:

> "Where one acre of land is shown to be serving as a homesite on a farm, accessible only by easement over publicly owned land, and the Maryland Tax Court affirms its assessment on the basis of residential rather than agricultural valuation, is it an error of law for a circuit court to reverse that Tax Court order and instead order the land to be assessed at the same rate applied to the surrounding agriculturally used land?"

For the reasons set forth in this opinion we answer the appellant's question affirmatively, vacate the order of the circuit court, and remand the case for further proceedings.

## The Facts

The appellees, Mr. and Mrs. Fitzgerald, own and operate a 118-acre farm located in Baltimore County. This real property is improved by the farmhouse in which the Fitzgeralds reside. For the 1978-1979 tax year, the appellant, Supervisor of Assessments of Baltimore County (Supervisor), assessed the various component tracts of the farm as follows:

34 acres, tillable Class B, valued at $260 per acre,

20 acres, pasture, valued at $210 per acre,

58 acres, wooded, valued at $70 per acre,

5 acres, marsh, valued at $40 per acre.

These assessments, made in accordance with Md. Ann. Code, Art. 81, § 19 (b) (1), reflect the farmland's agricultural use, and are not contested. The additional one acre of land surrounding the appellees' farmhouse, however, was valued at $10,000 on the basis of its *residential* use, and was assessed at $4,500 in accordance with homestead allowances.

The Fitzgeralds appealed the latter valuation to the Maryland Tax Court. On January 21, 1980, a hearing examiner heard the appeal. At that time Mr. Fitzgerald explained why he thought that the full $4,500 assessment of the homesite was erroneous. He stated that "every part" of the farm was used for agricultural purposes. Christmas trees were planted to within twenty feet of the house, ducks were nested beside the house for their protection, and quarter horses grazed on the front yard/pasture. The house itself is used as a farm headquarters, according to the appellees.

Mr. Fitzgerald also testified concerning several "detractions, deficiencies, and defects which were not taken into account by the assessor." The property was considered less valuable than surrounding land because the only access to the farm was by a fifteen foot wide easement over Baltimore City property. This limited means of access prevents the land's subdivision, because the Baltimore County Code requires that subdivisions be accessible by wider fee simple access routes.

The appellee further stated that his homesite's value was reduced by its proximity to the manure pit of a dairy farm, by the noise from a local airport, and by the land's distance from public roads.

In response, the assessor, Gordon Scharpf, Jr., explained the basis for the valuation of the one-acre site. He stated that pursuant to statutory authority the State Department of Assessments and Taxation established criteria for determining whether lands qualified for preferential taxation as agricultural property. These criteria included the local zoning of the land and its present use. He further explained that according to Department policy homesites of farms were valued as residential property, and that such homesites were "determined to be one acre, unless said homesite is obviously of greater value."

Mr. Scharpf explained that the Fitzgerald farm was zoned R.C. 2 which requires a minimum of one acre for homesites. He also presented assessment records of other residential property in the locality, showing that one acre lots had sold for $10,000 or more during 1977.

In a colloquy between Mr. Scharpf and Mr. Fitzgerald at the end of the hearing, both men agreed that the location of the farm homesite could have a detrimental effect on its use as a private home instead of a farm headquarters and residence. Mr. Scharpf indicated his willingness to consider sales records and information concerning the value of homesites more similar to the Fitzgerald farm than those properties examined during the assessment. Mr. Fitzgerald stated, however, that he could not find a sales record of property identical to his own because detached homesites in the middle of farms were not being sold.

The hearing examiner recommended to the Tax Court that the assessment be affirmed. This recommendation recited the assessor's policy of assessing all farm homesites as one acre. The recommendation also referred to Mr. Fitzgerald's contention that the homesite constituted less than one acre, but found that the petitioner failed "to meet the burden of proof required by Section 229 (h) of Article 81."

On June 3, 1980, the Maryland Tax Court issued its order in the case, stating only that the Tax Court had "reviewed, considered and adopted the Examiner's Recommendations as the grounds for its decision." The order does not indicate that the Tax Court reviewed the record. By that order the assessment was affirmed.

From the Tax Court order the Fitzgeralds appealed to the Circuit Court for Baltimore County. They contended that the Supervisor was wrong in assessing one acre of their farm as residential property when no evidence was presented to indicate that the homesite was used for anything but agricultural use. The Fitzgeralds did not challenge the expertise of the assessor, but asked the circuit court to reverse that portion of the assessment which was based on an assumption that all farmhouses were located on one acre of residential property.

On December 22, 1980 the Circuit Court for Baltimore County ordered that the Tax Court decision of June 3, 1980 be affirmed in part and reversed in part.

Having reviewed the record, the circuit court judge determined that:

"The transcript of the testimony before the Examiner contains substantial evidence to support the decision of the Tax Court, as well as affirmative evidence to the contrary.

A review of the recommendation of the Examiner and of the decision of the Tax Court indicates that no consideration was given to the affirmative evidence produced by the property owner against the assessment.

The record ... contains affirmative evidence against the assessment to the effect that it is unlawful for the owner of this farm to subdivide it for the purpose of selling the home and its curtilage of one acre separate from the 117 acres remaining. The only inference which can reasonably be drawn from this testimony is that the one acre homesite

does not have a market value of $10,000.00. There is no market for the homesite. The only value which the homesite has is agricultural use value. Since the land surrounding the homesite was assessed at the rate of $260.00 per acre, then the homesite also should be assessed for $260.00."

The circuit court then ordered the reduction in the homesite's assessment for tax year 1978-79. From this order the Supervisor appeals.

### The Law and the Case

In its written opinion the circuit court reviewed the decision of the Tax Court in light of the standard applicable to the Tax Court in its appellate process. This standard is set forth at Md. Ann. Code Art. 81, § 229 (h), and says:

"(h) *Disposition of cause.* — The Court is empowered to assess anew, classify anew, abate, modify, change or alter any valuation, assessment, classification, tax or final order appealed from, provided that in the absence of any affirmative evidence to the contrary or of any error apparent on the face of the proceedings, the assessment, classification or order appealed from shall be affirmed."

The circuit court determined that the Fitzgeralds had presented to the Tax Court "affirmative evidence" contrary to the valuation and assessment. More importantly, the circuit court found that:

"This evidence was not discussed in the report of the Examiner to the trial court. Since the trial court [tax court] used the Examiner's report as a basis for its opinion, it too failed to consider this evidence adverse to the substantial evidence which supported the decision of the Assessor and the County Board of Appeals."

The circuit court, having found that the Tax Court failed to follow its own standard of review, reversed the Tax Court's order concerning the one-acre assessment, in accordance with the standard for review set forth at Md. Ann. Code Art. 81, § 229 (o), which says:

"(o) *Decision of circuit court or Baltimore City Court.* — In any case, the circuit court for the county or the Baltimore City Court shall determine the matter upon the record made in the Maryland Tax Court. The circuit court or Baltimore City Court shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record. In other cases, the circuit court or Baltimore City Court may affirm, reverse, remand, or modify the order appealed from."

Having reviewed the record, applicable statutes, and case law, we agree with the circuit court that the Tax Court erred as a matter of law in affirming the assessment without considering the Fitzgeralds' evidence. Although substantial evidence was found in support of the assessment, the circuit court determined that "the only inference" which could be drawn from the Fitzgeralds' evidence would serve to refute the assessment. Thus, the Tax Court's decision could be reversed because it did not meet the Section 229 (o) two-part test of being both nonerroneous, as a matter of law, and supported by substantial evidence. *Comptroller of the Treasury v. Mandel, Lee, etc.,* 280 Md. 575, 374 A.2d 1130 (1977); *State Dept. of Assessments & Taxation v. Glick,* 47 Md. App. 150, 422 A.2d 34 (1980).

In *Bethlehem Steel Corp. v. Supervisor of Assessments of Baltimore County,* 38 Md. App. 543, 381 A.2d 1185 (1978), we vacated a circuit court order which reversed a Tax Court order denying intervention in Tax Court proceedings. The circuit court found that the Tax Court had erred in failing to state any reasons for the decision on the petition to intervene, thus making it impossible to determine whether or not the Tax Court abused its discretion. Citing *Comptrol-*

*ler v. Diebold, Inc.,* 279 Md. 401, 369 A.2d 77 (1977), Judge Wilner said:

> "Thus, the Court in *Diebold* stated at 407:
>
>> 'We have held that the standard by which a result reached by the Tax Court is reviewed is whether a reasoning mind reasonably could have reached the factual conclusion which that agency reached, *Fairchild Hiller Corp. v. Supervisor of Assessments,* 267 Md. 519, 521, 298 A.2d 148, 149 (1973). The application of this test need not and must not be either judicial fact finding or a substitution of judicial judgment for agency judgment.'
>
> It was incumbent upon the circuit court, therefore, to look to the record in the Tax Court. The mere failure of the Tax Court to state the reasons for its decision as to intervention does not, of itself, require reversal if the record discloses substantial evidence supporting the decision; and thus, what the circuit court considered the 'most compelling reason' for its action would not, of itself, justify that action."

The appellant contends that in the present case no reversible error occurred by the Tax Court's "failure to address" the evidence presented by the Fitzgeralds. We do not agree with this contention, because we do not characterize the Tax Court's action as a failure to *address* the evidence, or a mere failure to state the reasons for its decision. By the language and mandate of its order, the Tax Court apparently failed even to consider the appellees' evidence.

In the present case, the circuit court ruled that the only inference which could have been drawn from the Fitzgeralds' evidence would have refuted the assessment. Thus the circuit court determined that a reasoning mind could not have reached the conclusion which the agency reached, and the assessment was incorrect as a matter of law. *Sears, Roebuck*

*v. State Tax Comm.,* 214 Md. 550, 136 A.2d 567 (1957); *see Brown v. Md. Unemp. Comp. Board,* 189 Md. 233, 55 A.2d 696 (1947), cited in *State Dept. v. Glick, supra,* for the proposition that the implications of undisputed facts constitute reviewable questions of law.

Having made our own review of the evidence we cannot say that the circuit court clearly erred in reversing the Tax Court order. The circuit court exceeded its authority, however, when it ordered that the subject land be assessed at the same rate applied to the surrounding agricultural land. As stated in *Diebold, supra,* the application of the "reasoning mind" test must not involve judicial fact finding or a substitution of judicial judgment for agency judgment. *Comptroller v. Machiz,* 42 Md. App. 218, 225, 226, 399 A.2d 946 (1979).

The case must be remanded to the Tax Court for a full consideration of all of the evidence presented to the hearing examiner, and in light of the standard for valuation set forth in Md. Ann. Code Art. 81, § 19 (b) (1). This provision states in pertinent part:

> "(b) *Farm or agricultural use.* — (1) Lands which are actively devoted to farm or agricultural use shall be assessed on the basis of such use, and *shall not be assessed as if subdivided,* it being the intent of the General Assembly that the assessment of farmland shall be maintained at levels compatible with the continued use of such land for farming and shall not be adversely affected by neighboring land uses of a more intensive nature. . . . The State Department of Assessments and Taxation shall establish criteria for the purpose of determining whether lands which appear to be actively devoted to farm or agricultural use are in fact bona fide farms and qualify for assessment under this subsection. *Such criteria* shall be promulgated in rules and regulations which shall include, but shall not be limited to, the following:

(i) Zoning applicable to the land.

(ii) Present and past use of the land including land under the soil bank provisions of the Agricultural Stabilization Act of the United States government.

(iii) Productivity of the land including timberlands and lands used for reforestation." (Emphasis added.)

On remand, the Tax Court must be cognizant of the Court of Appeals ruling in *Fairchild Hiller, supra* at 521, that land would be assessed at current market value, unless the land is of such a special nature that no market for it exists, and then its value must be ascertained by consideration of its cost, nature, utility, and other characteristics.

In the present case the Tax Court must give full consideration to the legal prohibition against the subject property's subdivision and sale. This legal prohibition, and the provision of Section 19 (b) (1) quoted above, clearly prevents the Tax Court from arbitrarily deeming a specific block of real property, being actually used for farming, to be assessable as if it were subdivided residential property.

The Tax Court may consider the zoning requirements applicable to the land, but only as one factor in the criteria for determining the proper assessment of the subject property. The court must not use the zoning law as an irrebuttable presumption of the validity of the one-acre homesite determination.

The appellant argues that the Court of Appeals approved such a presumption in *Warlick v. Supervisor,* 272 Md. 540, 325 A.2d 587 (1974) wherein Judge Singley stated:

"[W]e perceive no impropriety or unfairness in the separate assessment of the home site. Had the curtilage surrounding the Warlick residence been more extensive and more pretentious, containing several acres of lawns and gardens, ornamental statuary and perhaps a pool, it would have been

manifestly inappropriate to extend to it the preferential tax treatment which is accorded farm property. That Mr. Warlick chose to make other use of his home site compels no different result, because its market value remained unaffected." *Id.* at 544.

The *Warlick* decision permitted the use of Anne Arundel County's one acre zoning requirement as "one of the criteria . . . in determining whether land qualifies for the farm use assessment," and affirmed the assessment as residential property of a one acre homesite which contained a house, extensive lawn, and property farmed by a tenant. This decision cannot be used by the appellant as authority for allowing the Tax Court to ignore additional evidence of the farm use of most of the subject property.

Recently this Court affirmed a determination that a one-half acre homesite and tenant dwelling house on unsubdivided farm property constituted residential and not agricultural property. *Brown v. Supervisor,* 43 Md. App. 153, 404 A.2d 1083 (1979). In that case, a two-acre zoning requirement for residences was not used for assessment purposes; instead several different factors were considered including the characteristics of the neighborhood and activity on the property.

Therefore, on remand, full consideration must be given to the evidence presented by all parties concerning the agricultural or residential use of all parts of the subject property, and their proper assessment.

> *Judgment vacated.*
> *Case remanded to the circuit court for further remand to the Tax Court.*
> *Costs to be paid by the appellant.*